UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JASON DENT, | ) | |
|     Petitioner, | ) | |
| | ) | No. 22 CV 50445 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| THOMAS BERGAMI, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

    Petitioner Jason Dent has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the following reasons, his motions to file additional briefs [44] and [46] are granted, but his habeas petition [1] is denied.

**BACKGROUND**

    During his time as an inmate at FCI Hazleton, Mr. Dent was disciplined for interfering with a staff member. According to incident report #3498568, on April 27, 2021, staff members questioned Mr. Dent in his cell as part of an investigation. During questioning, Mr. Dent became verbally aggressive and refused to answer questions. Staff then prepared to leave and directed Mr. Dent to remain in the back of his cell until the door was secure. Instead, after staff left and tried to close the door, Mr. Dent allegedly tried to push it open. The door struck a staff member in the knee, fracturing it. The incident report states that Mr. Dent then tried to push his way past staff to exit the cell. Staff tried to restrain Mr. Dent, but he resisted. Additional staff responded and were finally able to restrain Mr. Dent. The incident report was completed the following day. The report was suspended while the incident was referred to the U.S. Attorney's office. The result of the referral was criminal charges against Mr. Dent for assaulting a corrections officer, though at trial jurors acquitted him. *See United States v. Jason Dent*, 1:22 CR 3 (N.D.W.V.).

    After his acquittal, proceedings on the incident report resumed. According to the incident report, a copy was delivered to Mr. Dent on June 9, 2022, Dkt. 21 at 74, though in his petition Mr. Dent alleges that he received a copy by January 9, 2022, Dkt. 1 at 10 ("On January 4, 2022, I was indicted by a federal grand jury . . . for assault on a Correctional Officer on April 27, 2021. . . . On January 9, 2022, I placed the incident report (#3498586) that Lt. Carr issued to me on 11/17/21 in a certify mail-legal mail envelope to mail to the Court."). The report was referred directly to a Disciplinary Hearing Officer, bypassing the Unit Disciplinary Committee because of the severity of the allegations. *See* Dkt. 21 at 75; 28 C.F.R. § 541.7(a)(4). On July 6, 2022, Disciplinary Hearing Officer Craddock conducted a disciplinary hearing. According to his written decision dated August 2, 2022, after considering all of the evidence, including Mr. Dent's acquittal of the criminal charges that arose from the same April 27, 2021, incident, DHO

Craddock found that Mr. Dent had interfered with a staff member in performance of his duties, and sanctioned him to the loss of 40 days of good conduct time. Dkt. 21 at 83. Mr. Dent alleges in his petition that he submitted an appeal of the DHO decision on September 5, 2022, by giving it to Officer Denjen to send out by certified mail. In his reply brief, he contends that the regional office never responded to his appeal, so he proceeded to the next step in the appeal process by filing an appeal with the central office, remedy #1131441-A1. Reply [43] at 2. According to Bureau of Prison records, the central office received his appeal on February 13, 2023, and rejected it on February 24, 2023, with directions to Mr. Dent to refile it with the regional office because there was no evidence the regional office had ever received his appeal.

Mr. Dent filed this suit on December 22, 2022, challenging his loss of good conduct time on the following bases: (1) he was denied due process because he was not timely given a copy of incident report #3498568, was not given a hearing before the UDC, and Disciplinary Hearing Officer Craddock exhibited bias against him by telling him at the hearing that did not matter what he had to say; and (2) he was subject to double jeopardy because he was disciplined for conduct of which jurors had already acquitted him. Upon receiving Mr. Dent's petition, the Court ordered briefing. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not."). Proper exhaustion requires compliance with the Bureau of Prisons' Administrative Remedy Program,

which is set out at 28 C.F.R. §§ 542.10-542.19. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Under the program, a prisoner challenging the decision of a disciplinary hearing office must submit a form BP-10 to the Regional Director. *Id.* § 542.14(d)(2). The Regional Director has 30 days to respond. *Id.* § 542.18. If the prisoner is still not satisfied, he must take a final appeal to the Office of General Counsel in Washington, D.C. using form BP-11, which must be "accompanied by one complete copy or duplicate original of the institution and regional filings and their responses." *Id.* § 542.15(a), (b). The General Counsel must respond within 40 days. *Id.* § 542.18. If a prisoner does not receive a timely response to his appeal, he "may consider the absence of a response to be a denial at that level." *Id.*

The common law recognizes exceptions to exhaustion, but the hurdle is high. *See Richmond*, 387 F.3d at 604. Exhaustion will be excused only when (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal quotation marks and citations omitted). The exhaustion requirement is not jurisdictional and so is waived if not raised by the government. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). Here, the government has raised the defense. *See* Response [21] at 4-6.

## I. Failure to Exhaust

According to the government, following the DHO's disciplinary decision, Mr. Dent filed a Request for Administrative Remedy, which was assigned case number 1131441-F1. Dkt. 21 at 202 (Request For Administrative Remedy 1131441-F1). In it, Mr. Dent made the following request: "All the inmates that went to the DHO with me on July 6, 2022 got their DHO Reports on July 29, 2022. I did not get my DHO report." *Id.* The request was granted on August 29, 2022. Dkt. 21 at 201 (response to Administrative Remedy #1131441-F1). The response granting the request advised Mr. Dent that if he was dissatisfied, "you may appeal to the Mid-Atlantic Regional Director . . . within 20 days of the date of this response." *Id.* But according to the government, Mr. Dent skipped the regional director, and instead appealed directly to the central office by submitting Appeal # 1131441-A1. Dkt. 21 at 198 (BOP log of Mr. Dent's appeal). The central office denied his appeal and directed him to refile with the regional director. *Id.*

The government contends that Mr. Dent failed to exhaust because he skipped the regional director, even after the central office directed him to refile with the regional director. Mr. Dent responds that he attempted to appeal to the regional director by giving his appeal to Officer Denjen to mail by certified mail, and that he proceeded to appeal to the central office only after not receiving a response from the regional director within 30 days. Mr. Dent notes both that (1) exhaustion is excused when a facility fails to respond to a grievance, which renders the grievance process unavailable, citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); and (2)

under 28 C.F.R. § 542.18 when a prisoner does not receive a timely response to his appeal, he "may consider the absence of a response to be a denial at that level" allowing him to proceed to the next level of appeal.

The Court need not resolve the issue of whether Officer Denjen mailed Mr. Dent's appeal to the regional director because, even assuming he had and that that Mr. Dent timely appealed to both the regional director and central office, he would still not have exhausted because his administrative appeal concerned only his request for a copy of his DHO report, which was granted. Mr. Dent does not dispute that administrative appeal concerned only a request for his DHO report, or that he obtained the relief sought. In contrast, this suit challenges the decision reached in the report, arguing that it was the result of the denial of due process, double jeopardy, and bias. His administrative appeal 1131441-F1 raised none of those issues. "[T]he benefits of exhaustion [] include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Mr. Dent never challenges the government's contention that "he has not appealed the sanctions or proceedings" in his disciplinary hearing, Response [21] at 6, and nothing in the record presented to the Court reveals otherwise.

Accordingly, Mr. Dent failed to exhaust his administrative remedies before filing suit. But as detailed below, even if Mr. Dent had exhausted, his claims would still fail on the merits.

## II.     Denial of Due Process

Mr. Dent argues he was denied due process for three reasons. First, he contends he was denied due process because "I was never given the incident report (3498568) by Lt. Carr on June 9, 2022." The incident report itself states that Lt. Carr gave him a copy on June 9, 2022. Dkt. 21 at 74 (Incident Report #3498568). But according to Mr. Dent, that would have been impossible because on that day he "was in the SHU at FCI Hazelton" and did not return until June 13, 2022. Due process entitles prisoners in disciplinary proceedings to written notice of the claimed violation at least 24 hours before the disciplinary hearing. *Wolff*, 418 U.S. at 564. Mr. Dent's hearing occurred on July 6, 2022. Although he disputes that Lt. Carr gave him a copy of the incident report on June 9, 2022, detailing the claimed violation, according to his petition he had already received a copy before January 9, 2022, because on that day he "placed the incident report (#3498568) that Lt. Carr issued to me on 11/17/21 in a certify mail-legal mail envelope to the Court," referring to the U.S. District Court for the Northern District of West Virginia where the criminal proceeding arising from his disciplinary incident was pending. Given that on January 9, 2022, he mailed a copy of the incident report to his criminal court, he had a copy long before his July 6, 2022, disciplinary hearing. In addition, Mr. Dent does not dispute the authenticity of a Notice of Discipline Hearing he signed on June 22, 2022, which also identified the claimed violations of assaulting with serious injury and interfering with staff. Dkt. 21 at 66 (Notice of Discipline Hearing form). Given that he had the incident report as early as January 9, 2022, and also had notice of the claimed violations from the Notice of Discipline Hearing form he signed on June 22, 2022, he received the 24 hours' notice before his disciplinary hearing to which he was entitled under *Wolff*.

Second, he contends that he was denied due process because his disciplinary proceeding bypassed the UDC, and instead went directly to a disciplinary hearing officer. But under the Bureau of Prisons' Administrative Remedy Program, for prisoners "charged with a Greatest or High severity prohibited act," "the UDC will automatically refer the incident report to the DHO for further review." 28 C.F.R. § 541.7(a)(4). Mr. Dent's incident report charged him greatest severity level prohibited act 198, which is interfering with a staff member most like assault with serious injury. Consistent with the Administrative Remedy Program, Mr. Dent's incident report was automatically referred directly to a disciplinary hearing officer. Mr. Dent has not identified any right he was denied because of the automatic referral, such as the ability to be heard at a hearing or to present evidence, and so he has not established any denial of his due process rights stemming from the automatic referral.

Third, he contends he was denied due process because Disciplinary Hearing Officer Craddock was biased against him. In support, he states that DHO Craddock told him that "it did not matter what I had to say." Petition [1] at 6. A disciplinary hearing officer is "entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (cleaned up). A disciplinary hearing officer is sufficiently impartial as long as he or she was not "directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof." *Id.* at 667. Mr. Dent does not assert that DHO Craddock was involved in the underlying incident or its investigation. Moreover, Mr. Dent does not contend that the DHO Craddock's decision finding that he engaged in the alleged prohibited act was not supported by some evidence in the record. *See Hogan v. Warden*, No. 3:17 CV 783, 2018 U.S. Dist. LEXIS 159866, at *8 (N.D. Ind. Sept. 19, 2018) (no suggestion DHO was biased where he thoroughly considered the record and found sufficient evidence of guilt). In his reply brief, Mr. Dent argues for the first time that DHO Craddock was biased against him in retaliation for a letter Mr. Dent sent to U.S. Representative Eleanor Holmes Norton reporting the physical abuse of inmates by prison staff, including DHO Craddock. Rep. Norton forwarded to Mr. Dent the Bureau of Prisons' response that the information would be transmitted to the Bureau's Office of Internal Affairs. But it is sheer speculation that DHO Craddock ever learned of Mr. Dent's report to Rep. Norton. Accordingly, Mr. Dent has not established impermissible bias.

## II. Double Jeopardy

Mr. Dent argues that the disciplinary proceeding against him amounted to double jeopardy because he had already been acquitted in a criminal prosecution arising from the very same conduct for which he was punished by the Bureau of Prisons. The Double Jeopardy clause of the Fifth Amendment prohibits a second prosecution for the same conduct after a conviction or acquittal, and also prohibits multiple punishments for the same offense. *See McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005). But prison disciplinary proceedings do not constitute either prosecution or punishment for Double Jeopardy purposes. *See Decker v. Bell*, 772 Fed. Appx. 339, 341 (7th Cir. 2019) ("a defendant may be both disciplined in prison and criminally punished in court for the same conduct," citing *Garrity v. Fiedler*, 41 F.3d 1150, 1152 (7th Cir. 1994)). Accordingly, Mr. Dent's disciplinary punishment did not constitute double jeopardy.

### III. Arguments First Made in Reply Brief

Finally, the Court notes that in his multiple reply briefs, Mr. Dent raises arguments for the first time, including that (1) he was denied due process because he asked that his staff representative be allowed to watch video of the incident for which he was disciplined but was told none existed, (2) he was denied due process when he was never given an Advisement of Incident Report Delays for the time his incident report was suspended after being referred to the U.S. Attorney's office for potential prosecution; and (3) numerous courts have determined that prison staff falsely accuse inmates of misconduct, including whistleblowers at FCI Hazelton. The Court grants his motions [44] and [46] for leave to file these additional briefs. However, arguments raised for the first time in reply briefs are dirty pool, and such arguments are forfeited. *See Narducci v. Moore*, 572 F. 3d 313, 324 (7th Cir. 2009). As a result, the Court will not address these arguments further.

Likewise, after filing his petition Mr. Dent filed numerous affidavits. Some address issues beyond any raised in his petition. For instance, he advises the Court about responses to unrelated grievances, such as one about restrictions on his commissary account, *see* Dkt. 14 (Petitioner's Second Affidavit), and about briefing of a motion for a temporary restraining order he filed in his criminal proceeding, *see* Dkt. 18 (Affidavit). The Court has reviewed everything Mr. Dent has filed, but will not address issues he raised unrelated to the issues raised by his petition.

### CONCLUSION

The motions to file additional briefs [44] and [46] are granted, but for the reasons given his petition [1] is denied.

Mr. Dent is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Dent need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Date: March 28, 2024     By: _____
Iain D. Johnston
United States District Judge